# United States District Court
# Northern District of Indiana

| | |
|---|---|
| DEMOND CARR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 3:09-CV-301 JVB |
| v. | ) |
| | ) |
| DIANE KAMINSKY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Demond Carr, a *pro se* prisoner, was granted leave to proceed on a claim that Diane Kaminsky, a nurse practitioner at Indiana State Prison ("ISP"), provided improper medical care for his skin condition. (DE 28.) The defendant moves for summary judgment on the ground that Carr failed to exhaust his administrative remedies before filing suit. (DE 38.) Carr has filed an opposition to the motion and also requests that counsel be appointed for him.[1] (DE 44, 45.)

The Court turns first to Carr's motion for the appointment of counsel. Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). However, the Court may in its discretion appoint counsel under 28 U.S.C. § 1915. *Id.* In assessing a request for counsel under 28 U.S.C. § 1915, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). As to the first inquiry, Carr attaches to his motion letters from two different attorneys declining to take his case. (DE 45

---

[1] Carr labeled his response as a "Motion for Summary Judgment for Proceeding With Jury Trial," but it is apparent that he intended this as an opposition to the defendant's motion for summary judgment. (*See* DE 44, 44-1.)

at 5-6.) It is questionable whether contacting two attorneys, including one who appears to practice in the area of domestic relations, constitutes a reasonable attempt to obtain counsel in this civil rights action. (*See id.* at 6.) Nevertheless, assuming Carr could meet the first prong, the Court concludes that he is fully capable of litigating this case himself.

On this point, the Seventh Circuit has instructed:

> The decision whether to recruit *pro bono* counsel is grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. The question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.

*Pruitt*, 503 F.3d at 655 (internal citations and quote marks omitted). There are no "fixed" requirements for determining a plaintiff's competence to litigate his own case, but the Court should take into consideration the plaintiff's "literacy, communication skills, educational level, and litigation experience." *Id*. In short, "[t]he inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id*.

Applying those factors here, the Court finds that Carr is competent to litigate this case on his own. Although Carr does not address his educational level in the motion, it is apparent from his filings that he is literate and fully capable of making cogent arguments in support of his position. To date, he has actively pursued this litigation, and his filings have been neatly presented, comprehensible, timely, and supported by appropriate documentary evidence. Indeed,

2

it was Carr's *pro se* motion to reconsider that caused the Court to vacate the dismissal of the complaint and allow him an opportunity to replead his claims. (*See* DE 14, 20.)

Moreover, the issues presented in this case are not overly complex. Carr was granted leave to proceed on one claim against one defendant based on an alleged denial of proper medical care. In his filings, Carr demonstrates an awareness and understanding of the facts and basic legal principles relevant to his claim. He has already filed a response to the defendant's motion for summary judgment, which contains cogent arguments in support of his request that the motion be denied. For these reasons, Carr's motion for the appointment of counsel will be denied, and the Court turns to the defendant's motion for summary judgment.

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986.) "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether a genuine issue of material fact exists, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are prohibited from bringing an action in federal court with respect to prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023.

Here, Carr's claim stems from events occurring while he was housed at ISP.[2] That prison has a two-step grievance process: an initial grievance and an appeal.[3] (DE 40-2, Smales Decl. ¶¶ 4, 6, 11-12.) A record is kept of all offender grievances, and those records indicate that during the time he was housed at ISP, Carr filed four grievances, two of which pertained to lack of proper medical care for his skin condition. (*Id.* ¶¶ 9-12.) Although Carr completed step one of the process by filing two separate grievances complaining about his medical care, in neither instance did he complete step two by filing an appeal of the facility's response. (*Id.* ¶¶ 11-12.) Accordingly, the defendant argues that Carr did not properly exhaust his administrative remedies before filing suit.

---

[2] Carr was housed at ISP from December 27, 2007, to January 25, 2010. (DE 40-2, Smales Decl. ¶ 7.) He is presently housed at Wabash Valley Correctional Facility. (DE 33.)

[3] Carr asserts that the evidence provided by the defendant regarding the grievance process in place at ISP is "meritless." (DE 44-1 at 2.) The defendant provides a declaration from Lori Smales, the secretary in ISP's Grievance Department who is responsible for maintaining the facility's grievance records. (DE 40-2, Smales Decl. ¶ 3.) She is a competent witness and her affidavit is based on her personal knowledge of the facility's grievance system. (*Id.* ¶¶ 2-4.) Carr has not provided any contrary evidence to create a factual dispute regarding the grievance system in place at ISP.

In his response to the motion, Carr acknowledges that he did not appeal either grievance. He asserts that there was no reason for him to appeal "because those grievances were responded to." (DE 44-1 at 3.) It is perhaps understandable why Carr did not immediately appeal his first grievance, since the facility's response—although somewhat contradictory—was essentially favorable to him. In his grievance, Carr complained about the care he was receiving for his skin condition from Nurse Kaminsky and a prison doctor, Dr. Myers, and asked to see a dermatologist. (DE 40-2 at 6.) Director of Nursing D. Forehand responded that the grievance was "denied," but informed Carr that medical staff was attempting to schedule a "dermatology consult" with an outside clinic and would notify him when an appointment was set. (DE 40-2 at 9.) This was not quite a situation where the inmate received all the relief he requested, thus mooting the need for further appeal, since Carr had not yet received a visit to a dermatologist or even a scheduled appointment. *Compare Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005) (prisoner complaining about mattress did not have to appeal further after new mattress was provided). Nevertheless, because the facility's response suggested that Carr would soon be getting what he wanted, he may have thought it unnecessary to appeal at that point.

It quickly became apparent, however, that Carr was not going to get what he had requested. Days passed and no appointment was set; Carr inquired and was told by medical staff that his request to see a dermatologist was being "deferred" and that other options were being considered. (*See* DE 40-2 at 10.) At that point Carr could have appealed the denial of his original grievance; instead he opted to file a second grievance requesting to see a dermatologist. (DE 40-2 at 10.) In the facility's response, Carr was told that his request to see a dermatologist was being deferred, and that Dr. Myers would perform further testing of his skin condition. (DE 40-2 at

5

12.) It is obvious that Carr was dissatisfied with this response, and in his words he "took his grievance to the next level by filing this civil action." (DE 44-1 at 3.) At that point, however, Carr had an additional administrative remedy remaining: he had the right to appeal the facility's resolution of his grievance.

The record thus demonstrates that although Carr twice completed step one of the grievance process, in neither instance did he complete step two by filing an appeal. His failure to complete the administrative process means that he did not properly exhaust his administrative remedies before filing suit. *See Pozo*, 286 F.3d at 1025. Carr points to other correspondence he sent to ISP staff complaining about his skin condition during this period, but these documents are no substitute for compliance with the prison's formal grievance process. *See id.*

Because Carr did not properly exhaust his administrative remedies before filing suit, this case must be dismissed. It is not clear that Carr has the ability to file an appeal at this late date, in which case his claim against Nurse Kaminsky would be foreclosed. *Pozo*, 286 F.3d at 1025 ("Failure to do what the state requires bars, and does not just postpone, suit under § 1983."). Nevertheless, because it is possible that the state may allow Carr to cure his failure to exhaust, the dismissal will be without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice.").

Finally, to the extent that Carr argues that he is still receiving inadequate medical care at the correctional facility where he is presently housed, he is free to bring a new lawsuit after exhausting his administrative remedies.

For these reasons, the Court:

(1) **DENIES** the motion for appointment of counsel (DE 45); and

(2) **DISMISSES** this action **WITHOUT PREJUDICE** pursuant to 42 U.S.C. § 1997e(a).

**SO ORDERED** on May 26, 2010.

                                                         s/ Joseph S. Van Bokkelen
                                                    Joseph S. Van Bokkelen
                                                    United States District Judge
                                                    Hammond Division